FEDERAL DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRIAN D. KLENOSKI,

 Plaintiff,

v

DUNCAN AVIATION, INC.

 Defendant.

CASE NO.:

HON.

Ronald W. Ryan  (P46590)
LEWIS, REED & ALLEN, P.C.
Attorneys for Plaintiff
136 E. Michigan Avenue, Suite 800
Kalamazoo, MI  49007
(269) 388-7600

## COMPLAINT

NOW COMES the Plaintiff, Brian Klenoski, by and through his attorneys, Lewis Reed & Allen, P.C., and for his complaint against Duncan Aviation states as follows:

### JURISDICTION AND PARTIES

1. Plaintiff brings claims in this lawsuit under the Americans with Disabilities Act (ADA), 42 USC 12101 et seq., and the Michigan Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1201 et seq.

2. Jurisdiction is proper in this Court under 28 USC 1331 and 28 USC 1367.

3. This suit is brought, and jurisdiction lies pursuant to §107(a) of the Americans with Disabilities Act (ADA), 42 USC 12117, which incorporates by reference §706 of Title VII of the

Civil Rights Act of 1964, as amended, 42 USC 2000e-5.

4. Plaintiff filed a charge of employment discrimination based on disability with the Equal Employment Opportunity Commission (EEOC) within 300 days of the commission of the unlawful employment practice alleged in this claim.

5. Plaintiff received notification of the right-to-sue letter from the EEOC on Monday, April 18, 2022, and has filed this Complaint within 90 days of receiving the EEOC's notice of the right to sue.

6. Plaintiff, Brian Klenoski ("Brian") is a citizen of the United States and the State of Michigan and resides at 16843 E. West Ave., Fulton, Michigan.

7. All the discriminatory employment practices alleged in this Complaint occurred within the State of Michigan.

8. Defendant is a corporation with its office and principal place of business in Nebraska. Defendant does systematic and continuous business at its facility in Battle Creek, Michigan and employed the Plaintiff there.

9. Defendant is a *person* within the meaning of §101(7) of the ADA, 42 USC 12111(7), and §701 of Title VII of the Civil Rights Act of 1964, 42 USC 2000e.

10. Defendant meets all of the requirements for employer status under the ADA. 42 USC 12111(5)(A).

## STATEMENT OF FACTS

11. Plaintiff was hired by Defendant in April 2001, and worked for Defendant until February 5, 2020, as a Tech III Lead Mechanic with Inspection Authorization and Stamp at its facility located at the Battle Creek Executive Airport at Kellogg Field, 15745 S. Airport Rd, Battle

Creek, Michigan. Among other things, Mr. Klenoski's work required him to grind and sand paint and material from aircraft.

12. Beginning as early as January 2019, Plaintiff was exposed to lead and began to suffer the effects of lead exposure which physically manifested as an impairment to his cognition and balance.

13. Not surprisingly, considering the yet undiscovered lead exposure, on February 18, 2019, Defendant issued a Written Performance Improvement Plan for poor quality.

14. On March 11, 2019, Defendant issued a Final Notice and Notice of Demotion due to poor quality and attention to detail. Brian's title as Tech III Lead Mechanic with Inspection Authorization and Stamp was removed. Defendant took his Inspection Authorization and Stamp and demoted him to Tech II.

16. On April 1, 2019, Plaintiff was taken off work by his treating physician, David J. Schriemer, M.D. because of concerns regarding his cognitive function and balance. Brian's doctor had not yet discovered the cause of the impairments, but he had suspicions.

17. Answers came as to the cause of Brian's cognitive decline when a blood test known as a heavy metal screen was performed June 5, 2019. The test revealed that Brian's lead level was significantly elevated with a score of 17.1 mcg/dL. Anything above 10.0 mcg/dL was cause for concern.

18. It was not until June 2019 that Brian's doctor discovered and confirmed the presence of lead. Considering this objective medical evidence, including neurocognitive testing, both the Written Performance Improvement Plan of February 18 and the Demotion of March 11 should have been rescinded and not used as a basis to terminate Brian Klenoski, yet they were.

19. Dr. Schriemer kept Brian off work and as predicted, Brian's lead levels indeed declined, and Brian's cognitive function and balance improved significantly.

20. In August 2019 Dr. Schriemer summarized his treatment:

"Mr. Klenoski presented with complaints of poor memory and attention and errors at work in March. He has been off work since 3/1/2019. He reports that his job included sanding the fuselages of airplanes to remove corrosion. He did this without any mask or protective gear.

Significant findings in his evaluation include blood level of lead on 6/5/19 of 17.1 mcg/dL. A repeat level done on 8/7/19 was 11.4 mcg/dL. These levels are elevated. The patient reported no exposure to lead at home. He has a newer home which would not have leaded paint. No intervention was done to lower his lead level other than being off work. The half-life of serum lead levels is about 30 days. The concern is that he likely had significantly higher lead levels for three months prior to the first measurement that could affect cognition and memory.

Neurocognitive testing was done 6/18/2019 and 6/21/2019. This testing did show abnormalities in complex attention related to language, sustained attention, and visual recall. Testing also revealed high levels of health concern and mild generalized anxiety.

* * *

The concern is that the patient's lead level was likely significantly higher in March and could have been high enough to affect his ability to concentrate and remember. A repeat lead level is scheduled in early September."

20. By September 11, 2019, Brian's lead level had fallen to 10 mcg/dL and Dr. Schriemer felt it was safe for Brian to return to work. Brian indeed returned to work to his regular duties sanding and grinding on September 16, 2019. One month later another heavy metal screen was performed, and Brian's lead level had spiked to 12.8 mcg/dL when tested on October 23, 2019.

21. Dr. Schriemer took Brian off work again effective October 23, 2019. Brian's time off work was unpaid. He filed a Michigan Worker's Compensation claim on or about November 15, 2019. Dr. Schriemer's note dated October 26, 2019, states, "The elevation of his blood lead

4

level after it had been declining correlates to returning to work. This would imply ongoing work exposure."

22. On November 19, 2019, a repeat test of Brian's lead levels was performed and revealed his lead level to be 10.9 mcg/dL. Dr. Schriemer wrote, "He should stay off work until we document a lead level below 10."

23. Brian had his lead level tested on December 16, 2019. At that time, the lead level was 11.0 mcg/dL. Dr. Schriemer wrote, "We plan on repeating a level in 2 weeks. He should stay off work until we document a level below 10 mcg/dL."

24. Dr. Schriemer has testified in a Michigan Worker's Compensation proceeding consistent with his note of January 9, 2020, that, "his symptoms have improved as his lead level declined. Elevated lead levels are from environmental exposure. Because his levels dropped when he was off work, his exposure is presumptively from his work environment. He should not have continued exposure to lead he should not work in an environment with ongoing lead exposure."

25. Defendant refused Plaintiff's request for an accommodation to return to work even though it had available openings in Plaintiff's job category. Defendant did not offer any alternative accommodations to allow Plaintiff to return to work. Instead, the Defendant asserted that it terminated Brian due to "lack of integrity and trust" and cited the Written Performance Improvement Plan of February 18, 2019, and the Demotion of March 11, 2019, as Brian's "trend of poor performance" as reasons for its decision to terminate his employment.

26. When this action was commenced, Defendant had refused to return Plaintiff to work in any capacity.

## COUNT I
## VIOLATION OF THE ADA

27. At all relevant times, Plaintiff was an individual with a *disability* within the meaning of §3(2) of the ADA, 42 USC 12102(1). Specifically, Plaintiff has a physical impairment that substantially limits one or more of his major life activities, has a record of the impairment, and is regarded by Defendant as having the impairment.

28. Plaintiff is a *qualified individual* as that term is defined in the ADA. 42 USC 12111(8). Plaintiff is an individual who, with reasonable accommodation, can perform the essential functions of his job as an Airframe Technician at Defendant's facility.

29. The ADA makes it unlawful to discriminate against a qualified individual in the terms and conditions of employment because of disability. 42 USC 12112(a).

30. In rejection of Plaintiff's request for accommodation, Defendant refused to place Plaintiff in a position that was open at the time of his request.

31. Defendant's failure to make reasonable accommodations for Plaintiff constitutes discrimination against Plaintiff in respect to the terms, conditions, or privileges of employment. This conduct constitutes a violation of the ADA. 42 USC 12112(b)(5)(A).

32. Defendant has failed to undertake any good-faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation for Plaintiff.

33. Defendant conducted itself with malice or with reckless indifference to Plaintiff's federally protected rights.

34. As a direct and proximate result of Defendant's discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities. In addition, Defendant's failure to make reasonable accommodation to Plaintiff has caused or

continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

WHEREFORE, Plaintiff requests relief from this Court against Defendant as follows:

a. An Order of this Court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter.

b. An Order of this Court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter.

c. An award to Plaintiff of attorney fees, costs of litigation, and interest.

d. An order of this court granting Plaintiff further relief that it deems just and equitable.

## COUNT II
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE PDCRA

35. Plaintiff incorporates all above allegations by reference.

36. At all material times, Plaintiff was employed by Defendant.

37. Plaintiff's cognitive impairment due to lead exposure constitutes a disability, as that term is defined by and within the meaning of the PDCRA, MCL 37.1103(d).

38. At the time of his termination, Plaintiff's cognitive impairment had resolved and was unrelated to his ability to perform his duties as an Airframe Technician.

39. Plaintiff was discriminated against, within the meaning of the PDCRA, when Defendant terminated him because of his cognitive impairment.

40. Plaintiff's lead exposure and resulting cognitive impairment were determining factors in Defendant's decision to terminate Plaintiff and preclude him from returning to work.

41. The actions of Defendant and its agents, representatives, and employees were intentional in their disregard for the rights and sensibilities of Plaintiff.

42. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages, including the loss of earnings and earning capacity; loss of fringe and pension benefits; mental and emotional distress; humiliation and embarrassment; loss of career opportunities; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue a gainful occupation of choice.

WHEREFORE, Plaintiff requests relief from this Court against Defendant as follows:

a. An Order of this Court awarding Plaintiff compensatory damages in an amount to be determined at trial in this matter

b. An Order of this Court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter

c. An award to Plaintiff of attorney fees, costs of litigation, and interest

d. An Order of this Court granting Plaintiff further relief that it deems just and equitable.

Dated: May 18, 2022
LEWIS, REED & ALLEN, P.C.
Attorneys for Plaintiff

By: /s/
Ronald W. Ryan (P46590)
136 E. Michigan Avenue
Suite 800
Kalamazoo, MI 49007
(269) 388-7600